The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except the modification of the permanent partial impairment rating and weeks of compensation in Finding of Fact No. 8, Conclusion of Law No. 2, and Award No. 2.
Therefore, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner with some modifications as follows:
* * * * * * * * * * * * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as
STIPULATIONS
1. Plaintiff received compensation for the time she missed work except for the period from June 8 to July 2, 1993 when she was working limited hours for defendant-employer.
2. Plaintiff elects whichever remedy for permanent partial disability will pay the higher recovery.
* * * * * * * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the deputy commissioner except as modified as follows:
FINDINGS OF FACT
1. In May 1992 plaintiff was employed by defendant-employer as a clerk. Her job duties included making doughnuts, working as a cashier and closing the store. On May 19, 1992 she sustained a compensable injury when she slipped on some water and fell, landing primarily on her left knee. She immediately experienced pain and swelling in the knee and was subsequently seen at the emergency room. Dr. Guerra then treated her for a period of time before referring her to Dr. McCormick, an orthopaedic surgeon.
2. Dr. McCormick began treating plaintiff on November 19, 1992. She was continuing to experience pain, limitation of motion and swelling in her left knee which had not been improved with therapy. On December 8, 1992 Dr. McCormick performed arthroscopic surgery in which he found and repaired a small tear in her medial meniscus and a large plica over the medial femoral condyle. At that time he felt that most of her problems had come from the plica. However, plaintiff subsequently developed such limitation of motion that her knee became almost frozen. Her condition was ultimately diagnosed as reflex sympathetic dystrophy, a disturbance of the sympathetic nervous system. Dr. McCormick prescribed aggressive physical therapy and her condition improved some, but she continued to experience significant problems.
3. On May 11, 1993 Dr. McCormick released plaintiff to return to sit down work and on June 11 he indicated that she could stand at work on a part-time basis. Apparently she returned to work on June 8 in some capacity and worked for limited hours through July 1, 1993, but her condition worsened to the point that she could not continue working after that date. Dr. McCormick then recommended that she be evaluated at The Work Place, a local rehabilitation center.
4. Plaintiff was seen by Dr. Blanchat at The Work Place on July 14, 1993, and he was initially of the impression that they could not help her. Defendants then sent her to Dr. Waller for another opinion. Dr. Waller examined her on August 24, 1993, concurred with the diagnosis of reflex sympathetic dystrophy and recommended a pain clinic program designed for that problem where she could undergo an epidural or parasympathetic block followed by vigorous physical therapy. Consequently, plaintiff started such a program on October 1, 1993 at The Work Place. By November 17, 1993 when she was discharged, she had made significant improvement. However, she was still limited in the length of time she could stand, so it did not appear that she could return to work for defendant-employer. Consequently, vocational counseling was provided.
5. Plaintiff obtained employment with Revco beginning December 5, 1993 and worked there until January 16, 1994. She then worked a short time for Western Steer and next worked at Pizza Hut as a waitress. In all of these employments, she experienced difficulty with her knee. In addition, she was unable to earn wages as high as those she had been earning for defendant-employer. Beginning May 3, 1994 she began working at Arby's where she was allowed to take a break when necessary. This job paid her wages greater than her former average weekly wage with defendant-employer and had duties she could handle despite her ongoing knee problems. As of the date of hearing, she continued to be employed with Arby's.
6. Dr. Waller saw plaintiff on November 19, 1993 for a final evaluation. She had just completed the rehabilitation program at the time of that examination. For some unknown reason, defendants would not allow her to return to Dr. McCormick until March 4, 1994, but he was able to evaluate her on that date. She subsequently returned to him on April 18, 1994 after a flare-up of symptoms. However, he found no significant change in her condition on examination.
7. Defendants admitted liability for benefits under the Workers' Compensation Act for the injury in question and paid plaintiff compensation for her temporary total disability. However, the parties indicated that compensation was not paid to her for temporary partial disability from June 8 through July 1, 1992 when she was restricted to light work duties and, according to the stipulation of the parties, did not work on a full time basis. However, her actual earnings during that time were not placed into evidence so no specific findings can be made.
8. As a result of the injury by accident giving rise to this claim, plaintiff sustained a 22% permanent partial disability to her left leg. Since compensation for her rating would exceed compensation for her actual wage loss, she would choose to receive the former.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation for temporary partial disability at the rate of two-thirds of difference between her former average weekly wage of $200.00 and the weekly wages she earned from June 8 through July 1, 1992. G.S. 97-30.
2. Plaintiff is entitled to compensation at the rate of $133.34 per week for 44 weeks for a 22% permanent partial disability she sustained to her left leg as a result of this injury by accident. G.S. 97-31 (15) and (19).
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. G.S.97-2 (19); G.S. 97-25.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay compensation to plaintiff for temporary partial disability at the rate of two-thirds of the difference between her former average weekly wage of $200.00 and the weekly wages she earned from June 8 through July 1, 1992. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $133.34 per week for 44 weeks for her permanent partial disability. This compensation has also accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. An attorney's fee in the amount of 25% of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Young.
5. Defendants shall pay the costs.
 S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
BSB: be